

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00114-CR
### NO. 02-12-00115-CR


MANNIX LASILMON TODD                                      APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two issues, appellant Mannix Lasilmon Todd appeals his convictions for one count of indecency with a child by contact and two counts of aggravated sexual assault of a child.[2]  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.11(a)(1), (c) (West 2011), § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2012).

## Background Facts[3]

In 2010, Krystal lived with, among other people, her two daughters, Kelly and Kimberly, at a house in Arlington.[4]  Appellant initially lived across the street from Krystal with his common law wife, Sandra Fields.  Appellant and Krystal became friends, and in June 2010, while appellant was still living with Fields, he and Krystal began a romantic relationship.  Appellant moved in with Krystal in August 2010.  According to Krystal, her children viewed appellant as a father figure.[5]

One day in November 2010, when Krystal came home from work, Kelly, who was six years old at that time, told Krystal that the previous night, appellant had stuck his "middle part," meaning his sexual organ, in Kelly's "middle part," meaning her vagina.  Krystal, who was shocked at what Kelly had said, asked Kelly several times if she was sure about the outcry, and Kelly said that she was.

---

[3]The facts recited in this section comprise the testimony of the State's witnesses.  Witnesses called by appellant provided contradicting facts that we will discuss below.

[4]To protect the anonymity of the children who were named in the indictments and who testified at trial, we will use aliases to refer to them and to their mother.  *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[5]Kelly testified that she called appellant "Daddy."  Kimberly testified, however, that she did not like appellant being in the house.

Krystal revealed the outcry to appellant and told him to "get [his] stuff and get out."[6] Krystal then examined Kelly and saw "a rip" in her sexual organ.

Krystal took Kelly to a children's hospital in Fort Worth, where a nurse examined her. Later that day, Krystal asked Kimberly, who was ten years old in November 2010, about whether appellant had ever inappropriately touched her, and Kimberly said that appellant had kissed her mouth and had touched her "private area," meaning her vagina. After the police learned of Kelly's outcry, an officer collected, among other items, the panties that Kelly had worn on the night of the alleged sexual assault. Kelly spoke with Charity Henry, a child forensic interviewer, about her allegations concerning appellant.

A grand jury indicted appellant with two counts of aggravated sexual assault (by causing Kelly's sexual organ to contact his sexual organ) and one count of indecency with a child (by touching Kimberly's genitals with the intent to arouse or gratify his sexual desire). Appellant pled not guilty to all charges. During his opening statement and his closing argument, appellant's counsel contended that Krystal had manipulated her daughters to say that appellant had been sexually inappropriate with them.

The jury convicted appellant of all three charges. Appellant pled true to a repeat offender notice in his indictment, and after the jury heard one witness

---

[6]According to Krystal, while Kelly told her about what had happened with appellant, appellant was across the street because he was planning to go with Fields to pick up Fields's son from prison.

3

testify in the punishment phase of the trial, it found that the repeat offender notice was true and assessed appellant's punishment at confinement for life for the two aggravated sexual assault convictions and fifty years' confinement for the indecency with a child by contact conviction. The trial court ordered the sentences to run concurrently, and appellant brought these appeals.

**Evidentiary Sufficiency**

We construe appellant's first issue as a contention that the evidence is insufficient to support his convictions.[7] In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

---

[7]Appellant contends in the title of his first issue that the trial court should have granted his motion for a directed verdict. When the State rested at trial, however, appellant's counsel said that the "State's evidence [was] such that a directed verdict would be inappropriate." In the body of appellant's first issue, he contends that the "evidence is legally insufficient to sustain all of the convictions."

4

To obtain a conviction for indecency with a child by contact under the facts of this case, the State was required to prove that with the intent to arouse or gratify the sexual desire of any person, appellant touched Kimberly's genitals (including through her clothing). *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1); *Connell v. State*, 233 S.W.3d 460, 465–66 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.). Kimberly testified that on the day before Kelly's outcry, appellant had rubbed Kimberly's private part over her clothing and had kissed her lips while she was in Krystal's room and while Krystal was in the bathroom.[8] To obtain convictions for aggravated sexual assault under the facts of this case, the State was required to prove that on two occasions, appellant intentionally or knowingly caused Kelly's sexual organ to contact his sexual organ. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (2)(B); *Kelly v. State*, 321 S.W.3d 583, 590 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Kelly, who used an anatomically correct doll during her testimony, testified that while she was sleeping in an upstairs game room with her siblings and a cousin, appellant entered the game room and touched her private part with his hand and with his private part. Kelly said that this happened on two different nights. Kelly's and Kimberly's testimony alone was sufficient to support appellant's convictions.[9] *See Connell*, 233

---

[8]Kimberly also testified that she had seen appellant kiss Kelly's mouth.

[9]Appellant agreed during his testimony that Kelly and Kimberly appeared to be credible when they testified. He also conceded that he had several prior convictions, including five felony convictions. The trial court instructed the jury

5

S.W.3d at 466; *Johnston v. State*, 230 S.W.3d 450, 455 (Tex. App.—Fort Worth 2007, no pet.). The jury was free to believe all of Kelly's and Kimberly's testimony. *See Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) ("[T]he jury is free to accept or reject any or all of the evidence of either party, and any or all of the testimony of any witness.") (citing *Hernandez v. State*, 161 S.W.3d 491, 500 & n.28 (Tex. Crim. App. 2005)).

Along with Kelly's and Kimberly's testimony, other evidence supports the jury's findings of appellant's guilt. For example, DNA from the inside crotch area of the panties that Kelly wore on the night before her outcry to Krystal matched a sample of appellant's DNA.[10] Also, Kelly told the nurse who examined her that appellant had put his private area in her private area, that it had "hurt during and then after when she went to the bathroom," and that she had seen blood when "she wiped herself." The nurse found two recent tears at the bottom of Kelly's sexual organ, and the nurse concluded that the tears were consistent with Kelly's outcry.

---

that it could consider the convictions in "passing upon the weight" of his testimony.

[10]The forensic biologist who examined Kelly's panties testified that there was a "very little amount of DNA from a male" on the panties but that the partial male DNA profile from the panties matched appellant's DNA. The forensic biologist stated that one in 595 African American males would have matched the partial DNA profile from Kelly's panties, that one in 1,091 Caucasian males would have matched the profile, and that one in 567 Hispanic males would have matched the profile.

Furthermore, the jury could have reasonably inferred that the evidence revealed a possible motive—appellant's unfulfilled sexual appetite—for one of appellant's sexual assaults of Kelly. Krystal said that she had sex with appellant on the night before Kelly's outcry. Krystal testified, however, that she stopped the intercourse before appellant ejaculated because he was drunk, the sex was taking too long to complete, and she was tired. According to Krystal, when she and appellant stopped having sex, she took a shower, and appellant left the room and went upstairs, where Kelly slept. When Krystal got out of the shower, she saw appellant walking back down the stairs with a cigarette in his mouth.

We recognize that the witnesses called by the State and by appellant produced some evidence that a hypothetical factfinder could have weighed against findings of guilt. For example, the nurse who examined Kelly did not find semen in Kelly's sexual organ. The forensic biologist stated that she did not find spermatozoa on the swabs of the panties and that the male DNA profile on the panties could have gotten there from someone who had washed and folded them. Appellant testified that he washed the clothes at Krystal's house, and Krystal testified that while she worked, appellant helped around the house by, among other things, washing clothes. Kimberly testified that appellant was not drunk on the night that he rubbed her private part (which was the same night when, according to Krystal's testimony, appellant was drunk and sexually assaulted Kelly).

7

Fields testified that she and Krystal had a tense relationship, that Krystal was possessive in her relationship with appellant, and that Krystal had an "influence" over her children. According to Fields, on the day of Kelly's outcry, Fields and appellant were in the process of resuming their relationship, and Krystal told appellant that if he went with Fields to pick up Fields's son from prison, "he would be sorry." Fields expressed her belief that appellant was charged with the offenses because Krystal got mad at him and persuaded her children to lie.

Appellant testified that he did not commit sexual acts with Kelly or Kimberly, that he did not even go upstairs on the night of his alleged sexual assault of Kelly, and that instead, he slept in bed with Krystal that whole night. He also expressed that Krystal is "very emotional," that she did not like his continued relationship with Fields, that she coerced Kelly and Kimberly to say that appellant had been sexually inappropriate with them, and that he was never able to speak with Kelly and Kimberly about their allegations.

Although these facts could have caused a hypothetical jury to question the credibility or weight of the evidence supporting appellant's guilt, it is evident that the jury in this case did not do so because it convicted appellant. *See Castillo v. State*, No. 08-08-00332-CR, 2010 WL 4117674, at *4 (Tex. App.—El Paso Oct. 20, 2010, no pet.) (not designated for publication) ("In finding Appellant guilty of the charged offenses, the jury implicitly resolved the conflicts [in the evidence] in favor of conviction."); *see also Denman v. State*, 193 S.W.3d 129, 132–33 (Tex.

8

App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that the jury's conviction of a defendant established its implicit rejection of the defendant's self-defense theory). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must presume that the factfinder resolved any conflicting inferences in favor of the verdicts and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

Viewing the evidence in the light most favorable the jury's verdicts of conviction, we hold that a rational factifinder could have found the essential elements of appellant's crimes beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903. Thus, we conclude that the evidence is sufficient to support appellant's convictions, and we overrule his first issue.

**Alleged Evidentiary Error**

In his second issue, appellant contends that the trial court committed harmful error by overruling his objections to the admission of a recording of Kelly's forensic interview. During Kelly's testimony, appellant's counsel asked her if she remembered stating in a recorded interview that appellant did not kiss her, and Kelly testified that she did not remember making that statement. When

9

the State sought admission of a DVD of Kelly's forensic interview as a "prior consistent statement of a witness after the declarant's testimony," appellant objected, stating,

> [T]he door has not been opened for the introduction of . . . the entire interview of [Kelly] by this witness because only to the extent that this DVD . . . rebuts the charge of inconsistent testimony would [it] be relevant. The rest of it would be completely irrelevant except for the portions that are simply repetitious of her testimony while she's on the stand.
>
> To the extent that we've opened the door for a portion of this, it's for a portion only and that is on the subject of whether or not [Kelly] told this witness during this interview that the Defendant had kissed her.

The State responded to this objection by contending that the DVD was also admissible because it was offered to rebut a charge of recent fabrication or improper influence or motive. The prosecutor explained that appellant's "entire theory of th[e] case" was that Krystal had persuaded her daughters to lie. Appellant further objected that admission of the DVD was repetitious and constituted "improper bolstering" of Kelly's testimony, but the trial court overruled appellant's objections, admitted the exhibit, and allowed the State to play the DVD for the jury.

Even if we were to assume that the trial court abused its discretion by admitting the recording of Kelly's interview, we would be required to determine whether that error harmed appellant. *See* Tex. R. App. P. 44.2. Errors in the

admission of evidence are generally of a nonconstitutional dimension.[11]  *James v. State*, 335 S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.); *Stewart v. State*, 221 S.W.3d 306, 310 (Tex. App.—Fort Worth 2007, no pet.).  Thus, in examining the harmfulness of such an alleged error, we apply rule of appellate procedure 44.2(b) and disregard the error if it did not affect appellant's substantial rights.  Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."  *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see also Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (stating that in determining harm, we may ask whether there is a reasonable possibility that the error "moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question"), *cert. denied*, 532 U.S. 944 (2001).

In reviewing whether a nonconstitutional error caused harm, we review the record as a whole, including any testimony or physical evidence admitted for the

---

[11]Appellant does not contend that he had a constitutional right that was affected by the admission of the recording.

jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Concerning harm, appellant argues on appeal only that this court should "play [the recording] for itself in determining whether [the recording] . . . constituted harmful error."[12] Appellant does not explain why the admission of the recording was harmful when considered together with the other evidence at trial.

As the State argues, even if the trial court abused its discretion by admitting the recording of Kelly's interview, in which she stated that appellant sexually assaulted her twice, the jury received similar evidence, without objection, from three witnesses at trial (Kelly, Krystal, and the nurse who examined Kelly on the day of her outcry). We find it unlikely that the jury was inclined to reject Kelly's story of sexual abuse, as related by these three witnesses, but changed to a decision of accepting the story based simply upon hearing it again in the recording. *See Matz v. State*, 21 S.W.3d 911, 912–13

---

[12] We have done so. In the first few minutes of her recorded interview, Kelly discussed matters unrelated to appellant's charges. Later, Kelly identified a private part on a girl doll and said that appellant had put his private area on her private area on two occasions. Kelly's remaining statements in the video are consistent with, but more detailed than, her testimony. Appellant argues in his brief that Kelly's statements on the video were repetitive of her testimony.

(Tex. App.—Fort Worth 2000, pet. ref'd) ("Because the videotape is cumulative of [a sexual assault complainant's] properly admitted testimony on the same issue, even if the trial court erred in admitting the videotape, we must disregard the error because it could not have affected Appellant's substantial rights."); *see also Jiminez v. State*, No. 07-07-00389-CR, 2009 WL 3102010, at *6 (Tex. App.—Amarillo Sept. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (explaining that in "situations where an improperly admitted videotape 'essentially repeated the testimony' of the victim, when the victim also testifies and the videotape is cumulative of the victim's properly admitted testimony on the same issue, courts often disregard the error reasoning that it could not have affected the appellant's substantial rights"); *Shaw v. State*, 122 S.W.3d 358, 364 (Tex. App.—Texarkana 2003, no pet.) ("Because the State sufficiently proved the fact to which the hearsay relates by other competent and unobjected-to evidence[,] . . . we hold the admission of the hearsay constituted nonreversible error."); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that the improper admission of outcry testimony was harmless when similar testimony was admitted through the victim, a pediatrician, and medical records); *Jensen v. State*, 66 S.W.3d 528, 535–36 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (op. on reh'g) (citing *Matz* and holding similarly to the decision in that case). Conversely, we find it unlikely that the jury was inclined to accept appellant's defensive theory—that Krystal persuaded her daughters to lie during all stages of the case, including during the forensic interview, about

13

appellant's sexual abuse of them—but decided to reject the theory upon watching the recording of the forensic interview. Given that appellant's defensive theory, as expressed in his closing argument, was not that Kelly and Kimberly were intentionally lying about appellant's sexual abuse but instead that Krystal had put ideas "into [her daughters'] heads," Krystal's testimony, and her credibility, was likely more significant in determining appellant's guilt than the recording of Kelly's interview.

In the State's opening statement, the prosecutor did not mention the recording. During the State's closing argument, prosecutors mentioned the recording, but they did not indicate that the recording was more important than the other evidence supporting appellant's guilt. Furthermore, as explained above, the jury could have reasonably concluded that the DNA found on the inside crotch of Kelly's panties, along with the physical evidence of Kelly's injuries to her sexual organ (which the nurse testified were consistent with Kelly's outcry) corroborated her testimony.

For all of these reasons, we conclude that even if the trial court abused its discretion by admitting the recording of Kelly's forensic interview, the trial court's ruling did not substantially and injuriously affect the jury's verdicts and was therefore not harmful. *See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271. We overrule appellant's second issue.

14

**Conclusion**

Having overruled appellant's issues, we affirm the trial court's judgments of conviction.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 11, 2013