

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00265-CR

CARLOS CARROLL                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Carlos Carroll appeals his conviction for assault bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). In a single issue, he contends that the trial court erred by admitting an audio recording of oral statements he made to a detective during a jailhouse interview because the State

---

[1]*See* Tex. R. App. P. 47.4.

did not give him adequate notice of its intent to offer the recording during guilt-innocence at trial.  We affirm.

**Background Facts and Procedural History**

Grand Prairie Police Officer Edward Bylotas met Tamikko Fields during a family-violence call on July 7, 2010.  Fields "had definitely been battered"—she had cuts, scratches, swollen eyes, a busted lip, and abraded knees.  She said that Appellant had caused her injuries.

On July 12, Fields hand-wrote a sworn account of the assault and gave it to Detective Heath Wester.  She also completed a hand-written, family-violence-victim statement, identifying Appellant as her sole attacker.  Detective Wester obtained a warrant for Appellant's arrest on July 14.

On November 22, Appellant ran a stop sign and was arrested on the warrant.  Detective Wester interviewed him while he was in custody.  The interview was electronically recorded, but the recording was not forwarded to Appellant's lawyer until the Friday before trial, having been turned over to the district attorney's office less than two weeks earlier.

During his opening remarks at trial, Appellant's lawyer told the jury:

> The evidence will show and the State will not be able to produce any evidence that the police ever talked to Carlos [Appellant].  They knew where he was; Tamikko knew where he was; but no one ever talked to him.

> That's a failure of investigation.  There was never an effort to go find these other two gentlemen [who Appellant claimed committed the assault], even after the State knew about it.  It's their burden.

2

. . . .

But the police officers, the State, and all the other people that are involved in the process of investigating this did not do their job. The person who's actually guilty of assault that they are talking about is not in this courtroom today, and we don't even know where they are.

Officer Bylotas testified that on July 7, Fields told him that Appellant had become angry when she picked him up late from work and had started hitting her as she drove him home. She also told Officer Bylotas that when she stopped the car to fight back, Appellant got out, ran around to the driver's side, pushed her over into the passenger side, and drove to his apartment complex. There, he dragged her from the car, threw her to the ground, punched her in the face, and kicked her.

The State subpoenaed Fields and she testified—reluctantly—confessing that she did not want to be there. She testified that she had been drinking on the day that she arrived late to pick up Appellant from work, that he climbed into the back seat behind her, and that she started an argument with him and tried to punch him in the leg. Then he hit or pushed her in the back of the head, which did not hurt her but "ticked [her] off" and caused her to swerve and step on the brake. She did not remember him hitting her again in or out of the car. She also testified that after she dropped Appellant off at his apartment, she "got into it" with one of "two black dudes" in the parking lot, that one of them may have beaten her, but that she experiences "blackouts" when she drinks and she was too drunk at the time to remember.

3

This testimony differed from what she told Officer Bylotas at the scene, and Fields acknowledged that it also differed from the sworn, hand-written statement she gave to Detective Wester within a week of the incident. In that report, she stated that Appellant "struck" her on the right side of her face "with his fist" four or five times, "punched" her on the left side of her head, "snatched" her from her car, "bashed" her head on the car several times, "dragged" her on the ground while "punching" her in the face and head, "kicked [and] stomped" her on the left side of her body numerous times, called her names "as he kept stomping [and] punching [and] dragging" her, and finally left her "lying on the ground in a[n] ant bed." Although at trial Fields persistently denied remembering who caused the multiple injuries that she described in her written statement and that were depicted in numerous photographs admitted at trial, she conceded that those injuries caused her considerable pain.

On the next day of trial, the State offered State's Exhibit 15, a compact-disc recording of Appellant's jailhouse interview with Detective Wester. Outside the presence of the jury, the prosecutor explained to the trial court that originally he had not planned to offer the exhibit, but had changed his mind after Appellant's opening statement and had decided that he needed it to counter Appellant's remark that the police never talked to him. After reviewing the reporter's notes, the trial court concluded that Appellant had opened the door, and it overruled the objection but granted a running objection.

4

Detective Wester testified that he met Fields at the police station on July 12, five or six days after the offense. He was aware that she had gone to the hospital for her injuries the night of July 7th and noted that when he saw her on July 12th, she was still "very sore, bruised up, still complaining of pain." He saw no signs that she had been drinking, though, and aside from her numerous injuries, she "looked perfectly normal." He testified that after he compared her written statements with those recorded in Officer Bylota's offense report, he obtained a warrant for Appellant's arrest.

The detective also testified that Appellant was arrested and interviewed in November. State's Exhibit 15 was admitted and published to the jury. On it, Appellant explained to Detective Wester that he and Fields had a physical altercation, in which he shoved the back of her head after she attacked him, but that he did not cause any of the injuries she sustained that night. Appellant explained that she engaged two other men after dropping him off at his apartment, and he opined that they must have beaten her. Detective Wester telephoned Fields to confirm Appellant's account about the two other men; she said "it was all a lie."

Appellant testified in his own defense "to clear [his] name." He admitted that he shoved Fields in the back of the head with an open hand but only to stop her from wildly swinging her fist at his face and legs while she was driving. He denied causing her any injury.

The jury found Appellant guilty of assault, and the trial court sentenced him to 140 days in the county jail.

## Discussion

Article 38.22, section 3(a) of the code of criminal procedure provides, in pertinent part, that no electronic recording of an oral "statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless . . . not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a . . . copy [of the recording]." Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (West 2005). Subsection (e) directs that "[t]he courts of this state shall strictly construe Subsection (a) . . . and may not interpret [it] as making admissible a statement unless all requirements of the subsection have been satisfied by the state."[2] *Id.* § 3(e).

Appellant contends that the trial court erred by admitting State's Exhibit 15 because the State gave him inadequate notice that it intended to offer it. The State agrees that Appellant did not have twenty days' notice as required by the statute, but argues that Appellant opened the door to the exhibit when his lawyer asserted that the police never talked to him.

---

[2]There are two listed exceptions to Subsection (e) that do not apply in this case. *See id.* § 3(e)(1),(2); *see also Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 681 (Tex. Crim. App. 2009) ("[W]e hold that the express language of Article 38.22 does not include an exception for statements that are not confessional in nature, do not implicate the accused for the offense prosecuted, or constitute an offense.").

This case reveals some tension between the long-standing doctrine known as "opening the door" and a statutory exclusionary rule. The former allows admission of otherwise inadmissible evidence when a party "opens the door" to it. *See, e.g.*, *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). The latter, by express directive, must be strictly construed. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(e).

Typically, a trial court's decision admitting evidence is reviewed for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). That standard requires affirming the trial court's ruling so long as it is within the zone of reasonable disagreement. *Tillman*, 354 S.W.3d at 435; *Montgomery*, 810 S.W.2d at 391.

We hesitate to apply an abuse of discretion standard in this case. First, neither party suggests that is the standard of review, although both agree that State's Exhibit 15 came in against the plain language of article 38.22.[3] Second, although abuse of discretion is regularly applied in cases holding that the open-door doctrine trumps evidentiary rules,[4] the State has not directed us to, nor have

---

[3]Appellant argues that the standard of review is the harm analysis set out in rule of appellate procedure 44.2(b). The State agrees that 44.2(b) controls the harm analysis but asserts that we do not reach harm because even though the evidence came in contrary to plain language of the statute, the open-door doctrine essentially trumps the statute.

[4]*See, e.g.*, *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (assuming evidence inadmissible under rule 404(b), and holding no abuse of

7

we found, any case on all fours with this one—that is, an on-point instance of a reviewing court applying abuse of discretion to a trial court's admission of evidence that both sides agree came in despite the plain language of a statute, specifically, article 38.22 of the code of criminal procedure. And regarding the subject of plain language, third, the statute expressly directs that we "shall strictly construe" its exclusionary rule and "may not interpret" it to make a statement admissible "unless all requirements of the subsection have been satisfied by the state" (with two exceptions that do not apply in this case). *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(e). Finally, the court of criminal appeals has plainly stated: "Essentially, the defendant has the right to prevent the trial court from *considering* the admissibility of the oral confession until twenty days after a copy of the recording is provided." *Sells v. State*, 121 S.W.3d 748, 764 (Tex. Crim. App.) (emphasis added), *cert. denied*, 540 U.S. 986 (2003). Although this is

discretion because appellant opened the door), *cert. denied*, 130 S. Ct. 3411 (2010); *Hayden*, 296 S.W.3d at 554 (holding that even though State opened the door, trial court acted within its discretion to exclude rebuttal evidence under rule 403); *Powell v. State*, 63 S.W.3d 435, 439–40 (Tex. Crim. App. 2001) (reversing court of appeals for erroneously holding trial court abused discretion to admit rule 404(b) evidence when appellant opened the door); *Green v. State*, 934 S.W.2d 92, 101 (Tex. Crim. App. 1996) (applying abuse of discretion standard to decide whether appellant opened the door to 404(b) extraneous offense evidence), *cert. denied*, 520 U.S. 1200 (1997). *But see Bowley v. State*, 310 S.W.3d 431, 437 (Tex. Crim. App. 2010) (Price, J., dissenting) ("assuming the rule [Texas Rule of Evidence 410(4)] applies here, the prosecutor's question was objectionable *even if* the appellant's line of questioning otherwise 'opened the door' to admission of any other relevant impeachment evidence.").

probably dicta in *Sells*, it strongly suggests that "shall strictly construe" means "shall strictly construe."

If that suggestion is true, then the standard of review is not abuse of discretion, but something else—presumably de novo—because if a trial court cannot consider whether evidence is admissible, then logically it has no discretion to admit it. It therefore follows that cases in which appellate courts have permitted trial courts *in their discretion* to admit otherwise inadmissible evidence through opened doors would not govern in a case such as this one where the legislature has withheld a trial court's discretion to admit evidence unless certain statutory requirements are met.

On the other hand, if the standard of review is abuse of discretion, and the trial court could, within its discretion, admit the entire exhibit because Appellant's lawyer told the jury that the police never talked to his client, we are not convinced that the ruling would fall within the zone of reasonable disagreement. First, we question the prosecutor's assertion to the trial court that he needed the audio recording to "combat" Appellant's claim that the police never talked to him. The State argues in its brief that defense counsel's blanket assertion that there was no evidence that the police ever talked to Appellant "called out for correction" by admitting the contents of the exhibit, that is, all of Appellant's statements recorded therein. We disagree. Certainly, the detective could have testified to the contrary without disclosing the content of Appellant's statements.

9

Second, even if the State needed a portion of the statements recorded on the exhibit, we question whether it needed the whole thing. Surely, a small slice of the recording—enough to identify the detective and Appellant as the ones talking to one another—would have sufficiently rebutted Appellant's assertion that he and the police never talked. "[O]therwise inadmissible evidence may be admitted if the party against whom the evidence is offered 'opens the door.' But, the party offering the evidence may not 'stray beyond the scope of the invitation.'" *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (quoting *Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989)).

Third, an apparent inconsistency in the record between the explanation the prosecutor gave to the trial court and the one he later gave to the jury during closing argument undermines the State's claim that before Appellant's opening statement the State "had no intention to offer" the exhibit. Early on, the prosecutor told the judge that he had not intended to offer the exhibit until he heard Appellant's opening statement and that his "purpose in offering it" was "to combat the opening statements of the Defense counsel in saying that [the State] made no attempt to speak with the defendant when [it] did." During closing argument, though, the prosecutor told the jury,

> The reason -- one of the main reasons, the defendant's statement. We want you to see it. We want you to hear it. Not only does he admit to hitting her . . . . But it puts him at the scene, no doubt. . . . All the elements he admits to, other than the fact he says either I hit her back, and it was justified, because it's self-defense, or it didn't hurt her . . . .

10

The earlier explanation given to the trial court aligns with the State's claim that it originally never intended to offer the exhibit, but the explanation to the jury does not. To the contrary, it suggests intent to offer the exhibit all along.

But even assuming without deciding that the trial court erred by admitting the exhibit, after examining the record as a whole, we have fair assurance that the ruling did not have a substantial and injurious effect or influence in determining the jury's verdict; in other words, it did not affect Appellant's substantial rights, so we must disregard it. *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 3030 (2011); *Woods v. State*, 152 S.W.3d 105, 118 (Tex. Crim. App. 2004), *cert. denied*, 544 U.S. 1050 (2005); *Sells*, 121 S.W.3d at 764 ("Because a violation of § 3(a)(5) is statutory, the appropriate harm analysis is the standard found in Rule 44.2(b).").

It is undisputed that Fields was severely beaten by someone and that someone caused her considerable injuries. Appellant's counsel pointed out that "somebody beat her up pretty bad," describing her injuries as "incredible" and noting that they included fractured ribs and caused her "a lot of pain." Fields originally told the police that Appellant caused the multiple obvious injuries that Officer Bylota observed when he responded to the 911 call. Yet she testified at trial that she had been so drunk that day that someone else might have assaulted her. Her testimony largely followed the version that Appellant gave

11

Detective Wester and that was recorded on the exhibit Appellant claims the trial court reversibly erred by admitting.

The improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905 (2011); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Stewart v. State*, 221 S.W.3d 306, 312–13 (Tex. App.—Fort Worth 2007, no pet.) (holding harmless trial court's error in admitting document because evidence had already been admitted without objection). The most damning of Appellant's admissions in State's Exhibit 15 was, as the prosecutor argued during closing argument, that he hit Fields in the back of the head. But this evidence had already come in without objection through Officer Bylotas, Detective Wester, and Fields.

Appellant argues that the exhibit harmed him because its admission "forced" him to modify his defense strategy and testify and because the jury did not believe him. We reject the notion that the trial court somehow "forced" Appellant to testify or otherwise caused him harm. To the contrary, Appellant explained to the jury that he wanted to "testify as an opportunity to clear [his] name."

We also reject the notion that Appellant was harmed because the jury did not believe him when he did testify after the trial court admitted his earlier

12

statement to police. One of his defensive theories was that he was not responsible for the serious injuries depicted in the photographs admitted at trial. If he was guilty at all, he argued, it was of only Class C misdemeanor simple assault without bodily injury. The record shows that he and Fields were the only sources from which Appellant might develop this theory. And the record shows that Fields did not produce much to develop it. That left it up to Appellant. What he said in the interview to Detective Wester was actually rather consistent with this theory and with the testimony he gave at trial. We decline the invitation to hold that Appellant suffered harm from the admission of an exhibit that arguably promoted one of his defensive theories.

Moreover, the record shows that Appellant's primary defensive theory was that Fields was the first aggressor and he responded only in self-defense. According to Appellant, although he hit, pushed, or shoved her in the back of the head, he did so only once to stop her flailing her fists back into his face and legs. Self-defense usually accompanies a defendant admitting the elements of the offense while presenting evidence that they were justified. *See Juarez v. State*, 308 S.W.3d 398, 401–02 (Tex. Crim. App. 2010) ("[A] defendant must admit to all elements of a charged offense before the defendant will be entitled to a defensive instruction. . . . [on] self-defense."). So, given his primary defensive theory, Appellant could not have been harmed by his admission that he hit Fields in the back of the head because it was an essential element of self-defense.

13

## Conclusion

After reviewing the entire record, we conclude that any error in admitting the audio-taped interview was harmless. *See Sells*, 121 S.W.3d at 765; *Hailey v. State*, No. 02-10-00247-CR, 2012 WL 4936655, at *8 (Tex. App.—Fort Worth Oct. 18, 2012, pet. ref'd). Accordingly, we overrule Appellant's sole issue and affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

LIVINGSTON, C.J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 6, 2013

14