Tommy STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 2–06–255–CR.

Court of Appeals of Texas, Fort Worth.

March 29, 2007.

Sharon Primeau, Huntsville, for Tommy Stewart.

Melinda Mayo, Amarillo, for the State of Texas.

PANEL F: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

In six issues, Appellant Tommy Stewart appeals his conviction for the felony offense of assault on a correctional officer. We affirm.

## II. Factual Background and Procedural History

This is the case of the owner of the State Bar. Officer Billy Cook and Sergeant Bernardo DeLuna both testified that on March 22, 2002, they were working as corrections officers at the TDCJ Allred Unit while Stewart was an inmate there. As Officer Cook approached Stewart in the unit, Stewart used abusive language toward him. Sergeant DeLuna overheard this, but could not hear the specific words. He could tell, however, that the language was cursing and abusive. Officer Cook testified that Stewart called him a "stupid mother-f------ n-----." Officer Cook asked Stewart for his identification, which Stewart supplied. According to Officer Cook, as he looked at the card, Stewart struck the him in the face. Officer Cook testified that Stewart then grabbed him around the waist, picked him up and shoved him against a wall, cracking a rib. Officer Cook testified that he unsnapped his holster holding his COP (carry on person) spray, but was unable to pull it out because Stewart had his arms around the officer's waist. Sergeant DeLuna witnessed the struggle. Officer Cook finally got Stewart onto the ground, and after Sergeant Hale arrived, Stewart was handcuffed. Once the officer's hands were free, Stewart was already on the floor and there was no need for the spray. Officer Cook testified that both he and Stewart went to the infirmary.

Sergeant DeLuna testified that he was uncertain whether Officer Cook ever discharged the spray, although at one point, he assumed the spray was used, but he did not know that for a fact. It was the State's position that Officer Cook was lawfully discharging his duty when Stewart struck him in the eye.

Stewart testified that on the day of the incident Officer Cook was "up in the tower opening the doors" and kept closing the door in his (Stewart's) face. He told the jury it was actually Officer Jackson who was working the floor with Stewart, not Officer Cook. Officer Cook came down out of the tower, with his COP spray in hand and asked Stewart for his identification card. When Stewart gave Officer Cook his card, the officer began spraying him, according to Stewart. Stewart testified that he grabbed the officer's hand to keep from being sprayed and the two of them wrestled. Officer Cook never called for help, and two other officers stood by and watched. Officer Cook got some spray on his own hand and then wiped his eyes, causing redness to his face. Stewart agreed that both he and Officer Cook went to the infirmary.

Stewart said he had never had any trouble with Officer Jackson or Officer Cook before that day. Stewart did explain, however, that there was a conspiracy against him because he was a graduate of the Texas A & M college of law, a state judge on leave from the county, and in prison as part of an undercover assignment. Stewart also claimed to own the State Bar.[1] Stewart's general defense was that Officer Cook acted unlawfully in discharging his duty.

At trial, the jury found Stewart guilty, and the judge sentenced him to twenty years' confinement, to run consecutively with Stewart's prior sentence in cause no. 13,488, assessed on March 4, 1982.

## III. Disregarding A Line of Questioning

■ In his first issue, Stewart complains that the trial court improperly failed

---

1. A. I own the damn state bar.
 Q. You own the state bar?
 A. Yes, I do.

to instruct the jury to disregard a line of questioning proffered by the State. This testimony was as follows:

[STATE]: And then when you go into these units, have you ever been spit upon?

[OFFICER COOK]: Yes, sir.

[STATE]: Have you ever had urine thrown on you?

. . . .

[DEFENSE]: Objection. That's irrelevant.

THE COURT: Sustained.

[DEFENSE]: I would request the jury be instructed to disregard this line.

THE COURT: That's overruled. Go ahead.

[STATE]: Is it generally considered a pleasant place to work?

[COOK]: No, sir.

Analogizing the standard of review to that for reviewing the denial of a motion for mistrial and the admission or exclusion of evidence, *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App.2004) (denial of a mistrial standard) and *Rodriguez v. State,* 203 S.W.3d 837, 841 (Tex.Crim.App.2006) (admission of evidence standard), we review the evidence under the abuse of discretion standard. However, even assuming the trial court abused its discretion, we hold that the trial court's failure to instruct the jury to disregard was harmless.

Assuming error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R.App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights. Tex.R.App. P. 44.2(b); *see Mosley*

*v. State,* 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd).

Trial court error regarding the admission of evidence is generally nonconstitutional error. *See Solomon v. State,* 49 S.W.3d 356, 364 (Tex.Crim.App.2001). Because the trial court denied Stewart's request for an instruction to disregard an improper line of questioning, we conclude that the trial court's error, in any, was nonconstitutional. Therefore, rule 44.2(b) is applicable. Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

The first question the prosecutor asked Officer Cook about Stewart was eighteen questions after the previously recounted exchange. That exchange did not mention Stewart or implicate Stewart as the urine thrower. Further, the gap between the exchange and the first question about Stewart does not tie Stewart to the irrelevant exchange.

We conclude that, in the context of the entire case against Stewart, the trial court's assumed error in failing to instruct the jury to disregard did not have a substantial or injurious effect on the jury's verdict and did not affect Stewart's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the error. *See*

Tex.R.App. P. 44.2(b). We overrule Stewart's first issue.

## IV. State's Exhibit Number Three

■ In his second issue, Stewart asserts error on the part of the trial court in admitting State's Exhibit 3, a "Criminal Case Voluntary Statement" by Sergeant DeLuna, an eye witness to the Stewart–Cook confrontation.

■ The standard of review for a trial court's evidentiary ruling is abuse of discretion. *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App.2004) (citing *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim.App. 1998)). If the ruling was correct under any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then the ruling must be upheld. *Sauceda,* 129 S.W.3d at 120 (citing *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000)); *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Romero v. State,* 800 S.W.2d 539, 543–44 (Tex.Crim.App.1990). Even if it was error to admit the evidence, the error is cured if the same facts are proved by other unobjected-to evidence. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991); *Purtell v. State,* 761 S.W.2d 360, 376 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989).

During the direct examination of Sergeant DeLuna by the State, testimony was elicited that Officer Cook pulled out his COP during the scuffle with Stewart, but Sergeant DeLuna did not see him spray Stewart and could not tell weather Stewart was sprayed or not. Later, during cross-examination, defense counsel showed a portion of State's Exhibit 3, which had been highlighted, to Sergeant DeLuna wherein he had stated that Officer Cook had sprayed Stewart in the face. Defense counsel also elicited testimony from Sergeant DeLuna that the statement was made about two hours after the confrontation when the events were fresh in his mind.

Thereafter, the State offered the exhibit itself into evidence under the Rule of Optional Completeness, Texas Rules of Evidence. Tex.R. Evid. 107. The State's reason for seeking such introduction was to show that also in that report Sergeant DeLuna stated he was unsure whether Officer Cook had sprayed the COP spray. Defense counsel objected that he had never offered the written document itself into evidence and further that it was inadmissible "under 608—603 as extraneous documentary evidence, under [s]ubpart C, Texas Rules of Evidence, 613, [s]ubpart C." The objection was overruled and the document admitted. Rule 603 is entitled "Oath or Affirmation" and was apparently a misstatement by counsel. Tex.R. Evid. 603. Rule 608 contains the phrase "extrinsic evidence" as opposed to "extraneous evidence" and refers to the fact that specific instances of the conduct of a witness, offered for the purpose of attacking or supporting a witness's credibility, may be not proven by extrinsic evidence. Tex.R. Evid. 608(b). The exact nature of and reliance on this rule is not made clear in the record from the trial court. Rule 613(c) provides that the prior statement of a witness which is consistent with the testimony of the witness is generally inadmissible unless the prior statement is consistent with his testimony and is offered to rebut an express or implied charge of recent fabrication. Tex.R. Evid. 613(c). This rule would be a reason to support the State's offering of the document, not an objection thereto. Therefore, we will construe the initial part of counsel's objection as an objection to the State's offer of the document under the Rule of Optional Completeness.

The Rule of Optional Completeness reads as follows:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

TEX.R. EVID. 107.

■ Under the Rule of Optional Completeness, when only a portion of an act, declaration, conversation, writing, or recorded statement is introduced, the adverse party is entitled to introduce into evidence the remaining parts or any related act, declaration, writing, or recorded statement necessary to a full understanding of the evidence, or to explain that evidence. *Id.* Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *See Johnson v. State,* 747 S.W.2d 451, 453–54 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). "The so-called rule of optional completeness takes effect when other evidence has already been introduced but is incomplete and misleading." *Jones v. State,* 963 S.W.2d 177, 182 (Tex.App.-Fort Worth 1998, pet. ref'd). "Once an evidentiary door has been opened by one side, this rule serves to allow the other side to complete the picture." *West v. State,* 121 S.W.3d 95, 103 (Tex.App.-Fort Worth 2003, pet. ref'd).

In common practice, this rule is used when a portion of a document is read into evidence and opposing counsel wants other portions of the document read into evidence. When a document, or part thereof is itself offered, Rule 106 is applicable. That rule reads:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may at that time introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. "Writing or recorded statement" includes depositions.

TEX.R. EVID. 106.

■ In the factual scenario presented here, however, a portion of a document was initially only read, and then the document itself was subsequently offered by opposing counsel. A close examination of Rule 107 indicates that when a part of a writing is "given in evidence" the whole writing on the same subject may be "inquired into by the other" party. TEX.R. EVID. 107. The rule does not define the term "inquired into." The rule does state that any other writing necessary to fully understand or explain the initial offering "may also be given in evidence, as when a letter is read, all letters on the same subject ... may be given." *Id.* This language indicates that if a portion of a document is read into evidence, then other portions or other writings may *only* be read into evidence. In other words, if one party simply reads from a document, the party does not open the door for the opposing party to *admit* the document into evidence.

■ Therefore, we hold under the plain language of Rule 107 that it was error to *admit* State's Exhibit 3 into evidence when a portion thereof had only been *read* into evidence. *See id.* However, an examination of State's Exhibit 3 shows that the pertinent portion of the exhibit, that is,

where Sergeant DeLuna stated that Officer Cook sprayed Stewart in the face, but also indicated that he could not tell whether the spray was discharged, was evidence that had already been admitted without objection through the testimony of Sergeant DeLuna. Hence, the trial court's error in admitting the document was harmless. *See Reyes v. State*, 84 S.W.3d 633, 638 (Tex.Crim.App.2002) (finding any error in admission of evidence harmless if cumulative of evidence admitted elsewhere without objection). We overrule Stewart's second issue.

## V. Closing Argument

■ In his third issue, Stewart asserts error on the part of the trial court in overruling his objection to a portion of the State's closing argument.

■ To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

During closing argument, the prosecutor in the case told the jury

You're instructed that a public servant—it's the second paragraph [paragraph 11 of the jury charge]—acting under the power of his office or employment commits an offense if he intentionally subjects another to mistreatment. Okay. Now, that sounds awfully broad. That sounds like if you even look at him cross-eyed you committed a crime. Obviously that's not what it seems to say because other parts of this Charge tell you under what condition it actually becomes a crime. First of all, he has to

know that his conduct is unlawful. In prison situations sometimes you have to mistreat offenders because they just won't do what they're told. They won't cooperate.

Defense counsel objected "That's a misstatement of the law. There is no constitution or legal right to mistreat." This objection was overruled.

The prosecutor continued with examples of prison life and stated, "That's life in a prison system. Sometimes mistreatment has to happen ... you'll think it's mistreatment.... So just because someone thinks they've been mistreated is not necessary so. It has to be unlawful mistreatment." No further objection was made.

■ Assuming that the trial court did err by overruling Stewart's objection, we must assess whether that assumed error was harmful. Prosecutorial misstatements of law are not constitutional in nature. *Coggeshall*, 961 S.W.2d at 643. In conducting a harm analysis under rule 44.2(b), we disregard nonconstitutional errors unless appellant's substantial rights are affected. As previously noted, a substantial right is affected when error has a substantial and injurious effect or influence on the jury's verdict. *King*, 953 S.W.2d at 271. In making this determination, we review the record as a whole. *See Johnson*, 967 S.W.2d at 417.

Section 9.53 of the Texas Penal Code provides that

An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believed the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

Tex. Penal Code Ann. § 9.53 (Vernon 2003).

A reading of the entire closing argument shows that the "mistreatment" language was in the context of a discussion that under certain circumstances force is necessary in a prison setting to maintain order and safety. When analyzed in its context, the State's argument was basically that the use of reasonable force did not constitute unlawful mistreatment. Furthermore, after reviewing all the evidence, we hold the trial court's assumed error of overruling Stewart's objection did not have a substantial or injurious effect on the jury's verdict and did not affect Stewart's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex. R.App. P. 44.2(b). We overrule Stewart's third issue.

## VI. Arguing Outside the Record

 In his fourth issue, Stewart asserts error on the part of the trial court in overruling his objection that the State's argument was outside the record.

 If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights. *Id.; Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). In determining whether the appellant's substantial rights were affected, we consider: (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Martinez*, 17 S.W.3d at 692–93; *Mosley*, 983 S.W.2d at 259.

During closing argument, the prosecutor told the jury that the members of legislature

aren't complete idiots. They know that prisons are dangerous places and sometimes you just have to force people to do things they don't want to do. But I would submit to you that he wasn't abused in any way. He was taken directly to medical after they got him handcuffed to make sure he was all right.

An objection was made and overruled. Stewart does not favor this court with an explanation of what portion of the aforementioned argument was outside the record. He does cite us to case law indicating that it is error for the State to "inject new facts harmful to the accused into the trial proceedings, citing *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982), and points out that it can be reversible error if a jury argument injects new and harmful facts into case or is extreme or manifestly improper." *Plummer v. State*, No. A14–89–00685–CR, 1991 WL 37003, at *6 (Tex. App.-Houston [14th Dist.] March 21, 1991, no pet.) (not designated for publication) (citing *Landry v. State*, 706 S.W.2d 105, 110 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986)).

We can in no way envision how the complained of argument injected new facts into the case or even how it was improper. *See Plummer*, 1991 WL 37003, at *6. Considering the appropriate factors, we hold that the severity of the prosecutor's misconduct, if any, was minimal. *See Martinez*, 17 S.W.3d at 692–93. Moreover, even absent the alleged misconduct, there was a significant degree of certainty of conviction given the wealth of evidence presented against Stewart at trial. *See id.* Therefore, we hold that even if the trial court erred by overruling Stewart's objec-

tion, it did not affect Stewart's substantial rights. *See* Tex.R.App. P. 44.2(b). Stewart's fourth issue is overruled.

## VII. Requested Defense Instruction

■ In his fifth issue, Stewart complains that the trial court erred by not granting a requested defense instruction regarding the lesser-included charge of misdemeanor assault.

Stewart offered the following requested instruction which was denied by the court:

If you find beyond a reasonable doubt that, on or about March 22, 2002, in Wichita County, Texas, the defendant intentionally, knowingly or recklessly caused bodily injury to Billy Cook, but you do not find or have a reasonable doubt that Billy Cook was lawfully discharging an official duty as a public servant, then you will find the defendant guilty of the lesser offense of Assault.

If you should find from the evidence beyond a reasonable doubt that the defendant is guilty of either Assault on a Public Servant or Assault, but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in the defendant's favor and find him guilty of the lesser offense of Assault.

If you have a reasonable doubt as to whether the defendant is guilty of any offense, then you should acquit the defendant and say by your verdict, "Not Guilty."

The court instructed the jury that if they found beyond a reasonable doubt that Stewart committed the crime charged in the indictment that they would find him guilty as charged in the indictment,

but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of Assault Against a Public Servant and next con-

sider whether the defendant is guilty or not of Assault.

Now if you find from the evidence beyond a reasonable doubt that on or about [the] 22nd day of March 2002, in Wichita County, Texas, the defendant, Tommy Stewart, then and there intentionally, knowingly, or recklessly caused bodily injury to Billy Cook by hitting Billy Cook in the left eye then you will find the defendant, Tommy Stewart, guilty of Assault and so say by your verdict.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant "Not guilty."

■ Thus, it is clear that the court did include a charge regarding the lesser-included charge of misdemeanor assault. Stewart cites *Granger v. State* for the principle that "an accused has the right to *an instruction* on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." 3 S.W.3d 36, 38 (Tex.Crim.App.1999) (emphasis added). *We recognize that this is a correct statement of the law.* However, this authority only entitled Stewart to *an instruction*, not an instruction of his choosing. *See id.* (emphasis added).

Stewart relies on *Hall v. State* for the proposition that when a public servant acts unlawfully in the discharge of his duty he loses the special protection of the law. *See Hall v. State,* 158 S.W.3d 470, 471 (Tex. Crim.App.2005). We agree that this is a correct reading of *Hall. See id.* However, *Hall* is distinguishable from the case at bar. In *Hall* the trial court denied *any* jury instruction on the lesser-included offense of misdemeanor assault. *See id.* at 472. Stewart received such a charge, and

thus we must conclude that his contention on appeal is that he did not like the way the court laid out and worded its charge. Stewart has pointed us to no authority, nor have we found any, that characterizes a defendant's dissatisfaction with the wording of the jury charge as error, much less reversible error.

Because Stewart received an instruction of the lesser-included offense of misdemeanor assault, we find no error and overrule his fifth issue.

## VIII. Consecutive Sentencing

In his sixth issue, Stewart asserts that the trial court erred in not including a requested instruction in the punishment phase of the trial in the charge to the jury.

Stewart requested that the following instruction be given to the jury:

> You are further instructed that, under the law applicable in this case, if a defendant is sentenced for an offense committed while the defendant was an inmate in the Institutional Division of the Texas Department of Criminal Justice and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense.

The request was denied. Stewart attempts to analogize the requested instruction to a statement in *Simmons v. South Carolina,* 512 U.S. 154, 156, 114 S.Ct. 2187, 2190, 129 L.Ed.2d 133 (1994) (plurality opinion), which held that when "state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 154, 114 S.Ct. at 2190. Stewart acknowledges that unlike Simmons, his is not a death penalty case but argues that the jury could be led either directly or inadvertently to believe that an inmate litigant needs a longer sentence because a portion of it or all of it will be eaten up by his present sentence.

Case law does not support Stewart's position. In *Levy v. State,* 860 S.W.2d 211, 213 (Tex.App.-Texarkana 1993, pet. ref'd), the court, in rejecting such an instruction, noted that "[i]n the absence of specific constitutional or statutory authority to do so, the court should not instruct the jury as to the effect of the parole laws or how long [an appellant] will be required to actually serve under a given sentence." *Id.* Stated differently, it would be improper for a trial court to instruct a jury on the consecutive sentencing law or to inform it of the effect such law might have on how long a defendant might serve. *See Clay v. State,* 102 S.W.3d 794, 798 (Tex.App.-Texarkana 2003, no pet.). Further, Texas Code of Criminal Procedure article 37.07, section 4(c) requires that the jury be charged as follows, as it was in this case:

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (Vernon 2006).

Simply put, we agree with our sister court's prior holdings that the instruction requested by Stewart is outside of constitutional and statutory authority and thus, improper. Furthermore, the concern ex-

pressed by Stewart as to the thought process of the jurors is not supported by anything in the record nor was it suggested by the prosecutor in closing argument. Moreover, article 37.07, section 4(d) reads, "This section does not permit the introduction of evidence on the operation of parole and good conduct time laws." *Id.* art. 37.07, § 4(d). For all the foregoing reasons, Stewart's sixth issue is overruled.

## IX. Conclusion

Having overruled Stewart's six issues, we affirm the trial court's judgment.