

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00476-CR

———————————————

RONNIE MICHAEL HOPPER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 60,066-A

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

A jury found Appellant Ronnie Michael Hopper guilty of one count of aggravated sexual assault of a child under the age of fourteen (Count One) and two counts of indecency with a child by sexual conduct (Counts Two and Three). The jury assessed his punishment at twenty-five years' confinement for aggravated sexual assault of a child and three years' confinement for each count of indecency with a child by sexual conduct. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021(a). The trial court sentenced Appellant accordingly, ordering that the sentences for Counts One and Two run concurrently and that the sentence for Count Three run consecutively to the other two sentences.

Appellant filed motions for new trial, which the trial court denied. Appellant then timely filed a notice of appeal. In three points, he complains that the trial court erred by excluding impeachment evidence, by admitting inadmissible hearsay, and by refusing to give the jury an instruction to disregard after sustaining his objection to evidence of extraneous conduct. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgments.

## BRIEF FACTS[1]

Complainant A.R. (Amy)[2] reported to her seventh-grade math teacher that Appellant, her stepfather, had sexually abused her. Then, Amy told her school counselor that Appellant had sexually abused her that day and indicated by body movements that he had touched her breasts and genitals. The counselor called Amy's mother (Mother) and directed Amy to use her cell phone to call Mother as well. When Mother arrived at the school, she was very angry and accused Amy of lying about the sexual abuse.

The day after Amy reported Appellant's sexual abuse to her teacher and school counselor, Amy gave a detailed account to a forensic interviewer about Appellant's sexually abusing her over a period of time, specifically describing the sexual abuse that occurred the day before as well as another incident of sexual abuse that occurred approximately a year earlier. A sexual assault nurse examiner (SANE) then performed a medical examination of Amy. Amy told the SANE that Appellant had sexually abused her the previous day, and the SANE found discoloration, tearing, and abrasions on Amy's genitals consistent with her account.

---

[1]Appellant does not challenge the sufficiency of the evidence supporting his convictions. We therefore omit a detailed statement of facts.

[2]We use aliases to refer to the minor complainant, her peers, and her mother. *See* 2d Tex. App. (Fort Worth) Loc. R. 7; *see also* Tex. R. App. P. 9.8(a), 9.10.

Amy engaged in self-harm, cutting her arms and thighs, after reporting the sexual abuse. However, she had also engaged in cutting behavior before the alleged sexual abuse began. Because of the post-outcry cutting, Amy stayed a week in a mental health facility. Appellant was indicted for the sexual abuse prompting the outcry as well as for the incident of sexual abuse occurring approximately a year earlier that Amy relayed to the forensic interviewer.

## DISCUSSION

### I.    Standard of Review

We review the admission or exclusion of evidence for an abuse of discretion, which the record shows only when the ruling falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006); *Merrick v. State*, 567 S.W.3d 359, 375 (Tex. App.—Fort Worth 2018, pet. ref'd). We will uphold the trial court's correct decision under any applicable legal theory even if the trial court gave a wrong or incomplete reason for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

We also review the denial of an instruction to disregard evidence for an abuse of discretion. *See Maldonado v. State*, No. 10-11-00299-CR, 2013 WL 3847052, at *8 (Tex. App.—Waco July 25, 2013, no pet.) (mem. op., not designated for publication) ("[W]e will assume without deciding that the trial court abused its

4

discretion in failing to give an instruction to disregard" a question about a sawed-off shotgun that was in evidence); *Lambertz v. State*, No. 01-00-00633 CR, 2002 WL 1821982, at *3 (Tex. App.—Houston [1st Dist.] Aug. 8, 2002, pet. ref'd); *cf. Stewart v. State*, 221 S.W.3d 306, 310 (Tex. App.—Fort Worth 2007, no pet.) (holding standard of review for refusing curative instruction to line of questioning is abuse of discretion).

## II. Impeachment

Appellant's first point challenges the exclusion of impeachment evidence against Amy. The trial court admitted Amy's post-outcry mental health records at trial. However, to support the defensive theory that Amy caused the injuries the SANE found during the exam, Appellant also wanted the trial court to admit Amy's pre-outcry writings and cell-phone data that showed she had depression and suicidal ideations, cut herself, and talked about sex with peers before the sexual abuse prompting her outcry.

Amy's pre-outcry writings that Appellant wanted the trial court to admit at trial were in a binder Mother found in Amy's bedroom after Amy moved out. The trial court admitted "the portions of the [binder] . . . that talk[] about [Amy's] feelings towards [Appellant]" as Defendant's Exhibit 3. However, the trial court excluded the rest of the binder's contents and all the cell-phone data.

As the Texas Court of Criminal Appeals has explained,

The Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition. Rule 404(b) permits the defense, as well as the prosecution, to offer evidence of other acts of misconduct to establish a person's motive for performing some act—such as making a false allegation against the defendant. Rule 613(b) permits a witness to be cross-examined on specific instances of conduct when they may establish his specific bias, self-interest, or motive for testifying.

*Johnson v. State*, 490 S.W.3d 895, 910 (Tex. Crim. App. 2016). Generally, limiting a defendant's right to cross-examine a witness is within a trial court's discretion. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). For impeachment evidence to be admissible, the defendant needs to establish a "causal connection or logical relationship" between the evidence and the witness's alleged bias or motive. *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014) (citation and internal quotation marks omitted); *Tristan v. State*, 393 S.W.3d 806, 810–11 (Tex. App.—Houston [1st Dist.] 2012, no pet.). We recognize that this requirement cannot impinge on a defendant's right "to explore any plausible basis for witness bias." *Jones v. State*, 571 S.W.3d 764, 769 (Tex. Crim. App. 2019); *Pabon v. State*, No. 02-18-00517-CR, 2019 WL 4122611, at *4 n.3 (Tex. App.—Fort Worth Aug. 29, 2019, no pet.) (mem. op., not designated for publication).

## A. The State's Forfeiture Argument

The State argues that the trial court based its ruling excluding the proffered evidence on Rule 403 and that Appellant forfeited his point by not discussing Rule

403 in his brief. The basis of the trial court's ruling is unclear. We will therefore address Appellant's first point.

## B. No Preservation of a Constitutional Claim

Appellant references the Sixth Amendment right to cross-examination in the discussion of his first point, but, as the State argues, he did not raise a constitutional challenge to the exclusion of the impeachment evidence in the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Because Appellant did not raise a Sixth Amendment challenge to the exclusion of the impeachment evidence in the trial court, he did not preserve a constitutional complaint for appeal. *See Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018). We therefore overrule that portion of his first point claiming the exclusion of the impeachment evidence violates his Sixth Amendment right to cross-examination.

## C. Sex-Related Cell-Phone Data

Appellant argues on appeal that the exclusion of Amy's "sexually charged conversations with her peers" barred him from asking her about other possible causes of the discoloration, tearing, and abrasions on her genitals. The State argues that the excluded sex-related evidence was irrelevant under Rule 401 to show that a source

other than Appellant was responsible for Amy's injuries that the SANE observed and that the evidence was alternatively inadmissible under Rule 412.

Evidence must be relevant to be admissible. Tex. R. Evid. 402. Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action." Tex. R. Evid. 401. Rule 412 generally excludes evidence of an alleged sexual assault victim's past sexual conduct. Tex. R. Evid. 412(a), (e). However, evidence of specific instances of an alleged victim's past sexual behavior is admissible if its probative value outweighs dangers of unfair prejudice and it

(A)     is necessary to rebut or explain scientific or medical evidence offered by the prosecutor;

(B)     concerns past sexual behavior with the defendant and is offered by the defendant to prove consent;

(C)     relates to the victim's motive or bias;

(D)     is admissible under Rule 609; or

(E)     is constitutionally required to be admitted.

Tex. R. Evid. 412(b).

Our review of Appellant's Bill of Exceptions shows that Amy had the following textual exchange with a peer:

[Amy:]      So u like [Charlie's] dick

[Faye:]      Why[]?

[Amy:]      Tell him the story about [Kay] Not actually getting raped

[Faye:]      Not [Kay] when I was little I almost got raped

8

[Amy:]        Trust me there's a story I haven't told you And I'm not going to tell you

[Faye:]        Ooh

The excluded cell-phone evidence also included a reposting of a "game" with listed items such as: "Am I sexy or ugly," "Kiss or fuck me," "If I wanted to fuck would you let me," "How you feel about me (sexual wise)," "[W]ould u let me take your virginity," and "Could you see us dating." The trial court further ruled that Appellant could not cross-examine Amy about the excluded evidence. Appellant did not question Amy in making his Bill.

None of the excluded cell-phone evidence bears a plausible link to the evidence of trauma to Amy's genitals. It is therefore not relevant. *See* Tex. R. Evid. 401; *Snow v. State*, No. 02-17-00310-CR, 2019 WL 237734, at *9–10 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op., not designated for publication); *Hale v. State*, 140 S.W.3d 381, 396–97 (Tex. App.—Fort Worth 2004, pet. ref'd). Even if the excluded evidence had general relevance under Rule 401, it would not be admissible under Rule 412 in this instance because there is no link between it and any alleged motive or bias on Amy's part to falsely accuse Appellant of sexual abuse and it does not rebut or explain the SANE's testimony. *See* Tex. Rule Evid. 412(b)(2)(A), (C); *Snow*, 2019 WL 237734, at *9; *Alford v. State*, 495 S.W.3d 63, 67 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding the excluded evidence "does not explain how or when [the complainant] sustained the hymen tear, let alone rebut the specific charge at

9

issue"); *Stephens v. State*, 978 S.W.2d 728, 734–35 (Tex. App.—Austin 1998, pet. ref'd) (holding defendant failed to demonstrate "definite and logical link" between complainant's sexual behavior and alleged motive); *Cooper v. State*, 959 S.W.2d 682, 684–85 (Tex. App.—Austin 1997, pet. ref'd) (holding that evidence of complainant's sexual relations with boyfriend to prove she had fabricated accusation against defendant to conceal her relationship with boyfriend was not sufficiently connected to her motive to fabricate). Because we hold that the sex-related evidence is not relevant and even if it had general relevance, it would not have been admissible under Rule 412, we also hold that the trial court did not abuse its discretion by excluding it. *See De la Paz*, 279 S.W.3d at 344; *Qualls*, 547 S.W.3d at 675 ("If the trial court's decision to admit or exclude evidence is correct under any applicable legal theory, we will uphold that decision even if the trial court gave a wrong or incomplete reason for its ruling.").

### D.    Evidence of Amy's Mental Health

Other evidence in Appellant's Bill of Exceptions shows that Amy experienced loneliness, alienation, depression, and suicidal ideations and engaged in cutting behavior. Appellant argues that he wanted to introduce this evidence to show that Amy "was experiencing mental distress prior to the offenses as a basis for her bias or motivation" and to rebut the State's assertion that she suffered from mental trauma because she had been sexually assaulted. He contends that the exclusion of the mental health evidence left the jury with the false impression that Appellant was solely

10

responsible for the decline in Amy's mental health. The State argues that the challenged evidence is cumulative of evidence admitted without objection and therefore any error in excluding it is harmless.

Initially, we note that Amy's forensic interview indicated that the sexual abuse began at least as early as "around spring break" of 2016, when Amy would have been twelve or almost twelve years old. Those items in the exhibit that are dated are from 2017. While they may have shown Amy's mental distress before her outcry and the same-day sexual abuse that precipitated it, they were not relevant to show Amy's mental distress before the sexual abuse began. *See* Tex. R. Evid. 401, 402.

Regardless, other evidence admitted without objection showed Amy's mental state before the sexual abuse began and that other events contributed to her mental distress. Mother testified that Amy began complaining "in sixth grade or so" about other students bullying her because of her weight. Amy testified that she believed that she had begun cutting herself when she was eleven years old and that she engaged in cutting because of bullying at school, the sexual abuse, and the deterioration of her relationship with Mother after the outcry. Further, Amy's mental health records admitted without objection as State's Exhibit Number One provide:

- "The patient had a history of self-mutilation by laceration to relieve stress dating back to the 6th grade."

- "[Amy] stated that she was bullied in the 5th & 6th grade . . . ."

- "Patient reported that she has been cutting since the age of 11. She stated that she started cutting because of the bullying . . . ."

11

Thus, the jury received ample evidence showing Amy's mental health issues before the sexual abuse began. Therefore, even if the trial court abused its discretion by excluding Appellant's proffered evidence—a holding we do not reach—any error in excluding Amy's writings and cell-phone data was harmless. *See* Tex. R. App. P. 44.2(b); *Lindsay v. State*, 102 S.W.3d 223, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("When a trial judge excludes cumulative evidence, it is harmless error."); *cf. Johnson v. State*, 925 S.W.2d 745, 749 (Tex. App.—Fort Worth 1996, pet. ref'd) (applying former Rule 81(b)(2) and concluding, "[A]ny error in excluding the evidence would have had no impact on the outcome of the trial because the same evidence had already been admitted without objection. Consequently, any error would be harmless."). We overrule Appellant's first point.

## III.   Admission of Hearsay

In his second point, Appellant contends that the trial court abused its discretion by admitting the counselor's hearsay testimony that Mother "was very adamant that [Amy] was lying [about the sexual abuse], that [Amy] was making it up," and the error was harmful because it inflamed the jury's emotions against Mother, who was a key witness for the defense. The State responds that (1) the trial court did not abuse its discretion because Mother's statement was an excited utterance, and (2) even if the trial court abused its discretion, Mother's statements and belief that Amy lied about the sexual abuse were admitted without objection elsewhere, rendering any error harmless. Without addressing the admissibility of the testimony,

12

we hold that Appellant forfeited his point by not timely and repeatedly objecting to the counselor's testifying about Mother's hearsay statements alluding to the falsity of Amy's allegations, and in the interest of justice, we note that any error would have been harmless.

Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924. A party must object as soon as the basis for the objection becomes apparent. Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." (citations omitted)); *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995); *Lozano v. State*, 359 S.W.3d 790, 823 (Tex. App.—Fort Worth 2012, pet. ref'd); *see Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (discussing policies underlying the timeliness requirement). Generally, a party must object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort

13

Worth 2012, no pet.). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection before or after the complained-of ruling. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Qualls*, 547 S.W.3d at 681.

In the State's direct examination of the counselor, the following occurred:

Q. What do you recall about [Mother]'s demeanor when she arrived?

A. She was very angry. I would say she forcefully kinda pushed the—I mean, it was abrupt opening the door into my office, did not acknowledge anybody. She looked at [Amy] and—I want to make sure that—*she accused [Amy]*, she said, you know, *you better not be lying*, was one thing, and you're gonna make me choose sides, either my husband or—you know, or [Amy]. She never—I think at one time she did ask her, so when did this happen, and when she told her, she said, well, *that couldn't happen because he was in bed with me*.

Q. Did you consider [Mother]'s demeanor to be appropriate given the circumstances?

A. No.

Q. Did it concern you regarding [Mother]'s demeanor?

A. Yes.

Q. What did you do at that point recognizing with regard to your concerns about the way that [Mother] was reacting to this?

A. It was not what—I'm sorry. It's not what I would expect a mother to do for their child, and it caught me off guard because I've had students make reports in the past. I would contact the parent and the parent would always be upset and console their child, say what's wrong. She didn't do any of that. Sorry. She

14

even said at one time that—this really struck me—now I'm gonna have to find another boyfriend.

Q.    When [Mother] is saying these things to [Amy], how is [Amy] reacting?

A.    She's crying.  And I know [Mother] was like, you know, this is serious, and she said, I know.  *And she just kept going on and was like, he wouldn't do that, he's not that type of person.*

. . . .

Q.    What happens next?

A.    I asked—because, I mean, I was just kind of in shock.  I thought oh my gosh, what—you know, I was just so caught off guard. And I asked [Amy], I said, could you just go right outside my office.  . . . And she went outside.  And [former stepfather] was still in there and [Mother], and I tried to talk to her and say, you know, often, you know, it's—it's not somebody you would suspect, you know.  I'm trying to get her to at least consider that this could have happened.  *She was very adamant that [Amy] was lying, that [Amy] was making it up.*

[Defense Counsel]:  *Your Honor, I object to hearsay.*

THE COURT:  Overruled.

[Emphasis added.]

As the above excerpt shows, the counselor testified to Mother's statements indicating that Amy was lying and that Mother disbelieved the allegations more than once before Appellant objected.  That objection therefore came too late to preserve error.  *See* Tex. R. Evid. 103(a)(1); *Lozano*, 359 S.W.3d at 823.

15

However, even if Appellant had preserved error in this instance, it would be harmless. In addition to the counselor's unobjected-to statements about Mother's not believing the allegations, the jury received the following unobjected-to evidence:

- Amy's former stepfather testified that when Mother entered the counselor's office, "She looked right at [Amy] and said, '[Y]ou know lying's bad.'"

- Amy's mental health records provide that Amy stated "that she does not have a good relationship with . . . Mother because she called [Amy] a liar when [Amy] told her about [Appellant] being sexually inappropriate with her."

- Mother testified that she "kinda figured that, you know, it wasn't true" when she went to the counselor's office and that she "just walked in and told [Amy] that telling a lie like this can ruin somebody's life."

- Mother also testified that "once [she] heard the allegations, [she] knew they weren't true."

- Finally, Mother testified, "[M]y daughter is lying."

Because all of these other statements indicating that Mother told Amy she was lying and that Mother believed Amy was lying about Appellant's sexually abusing her were admitted for the jury's consideration, any error in admitting the counselor's testimony that Appellant objected to was harmless. *See Estrada*, 313 S.W.3d at 302 n.29; *Lane*, 151 S.W.3d at 193; *Qualls*, 547 S.W.3d at 681. We overrule Appellant's second point.

## IV. Denial of Instruction to Disregard

In Appellant's third point, he contends that the trial court erred by failing to grant his requested instruction to disregard after sustaining his objection to extraneous conduct. Before trial, the State gave notice of its intent to introduce evidence of

16

Appellant's prior bad acts, including that in the summer of 2016, while Amy was swimming with a friend, he touched Amy's inner thigh and also repeatedly brushed his body against her friend, making both girls uncomfortable. During trial, the trial court held a hearing outside the jury's presence about the admissibility of Appellant's extraneous acts. During the hearing, Amy testified that in addition to Appellant's touching her sexually, on three occasions, he had forced her to touch his penis. Amy did not discuss the pool incident in the hearing. Nevertheless, at the end of the hearing, the State told the trial court that it intended to offer "under No. 2 [of its notice] . . . A through F" but was not offering "No. 3 in [its] notice at th[at] time." Appellant stated "no objection." The trial court admitted "the matters . . . considered in the hearing . . . for the purposes stated" and stated that the jury would be instructed accordingly in the jury charge.

Numbers 2 and 3 of the State's Notice of Intent to Introduce Prior Convictions and/or Adjudications and/or Extraneous Offenses or Bad Acts provide:

> 2) In a meeting with [Amy] on June 29, 2018, she disclosed to [prosecutors] the following:
>
>   a. That during the incident disclosed regarding the allegation of aggravated sexual assault in this case that [Appellant] also pulled her hand and made [her] touch his penis under his clothing.
>
>   b. [Amy] further disclosed that prior to the incidents alleged in Counts 1–3 of the indictment that a separate incident occurred in which [Appellant] sat next to [her] on the couch while she was watching a movie. [Appellant] then put his hand under the blanket that she was using and under her clothes and

17

penetrated her vagina with his finger. The incident ended when [Mother] called [Appellant] on his cell phone.

    c. [Amy] further disclosed that during the incident alleged in Count 3 of the indictment [Appellant] did insert his finger into [her] vagina.

    d. [Amy] further disclosed that on or about the Summer of 2016 that [she] was getting a new bed and was sleeping on an air mattress. [Appellant] placed his finger inside of [her] vagina. In addition, [Appellant] pulled [her] hand onto [his] penis several times but [she] continued to pull her hand away.

    e. *[Amy] further disclosed that on or about the Summer of 2016 that [she] was in a swimming pool with [Appellant] and [her friend Mary]. While in the swimming pool, [Appellant] did touch [Amy's] inner thigh . . . and [he] repeatedly brushed his body against [Mary], making both females feel uncomfortable.*

    f. [Amy] further disclosed that she began feeling uncomfortable when [Appellant] would come into her room and rub her back as she was l[]ying down. [Appellant] would not say anything.

3) On or about June 1, 2016, in Wichita County, Texas, [Appellant] did then and there intentionally or knowingly cause physical contact with [Mary], by passing and/or rubbing [his] body against her[s] in a swimming pool, and [he] knew or should have reasonably believed that [she] would regard the contact as offensive or provocative.

[Emphasis added.]

In the State's direct examination of Amy in the jury's presence, the prosecutor asked if she remembered "any other times of [Appellant] touching [her] inappropriately," and Amy answered, "There was one time in the pool. My best friend—." Appellant objected, "Your Honor, I'm gonna object to this." The trial court sustained the objection, and the prosecutor told Amy, "[I]t's okay. You didn't do anything wrong. Okay? Let's not talk about that incident." Amy answered,

"Okay." The prosecutor began asking another question: "Do you remember the incident—," and Appellant then stated, "Your Honor, I'm gonna ask that the jury be instructed to disregard." The trial court overruled that request.

Specifically, Appellant argues that the trial court abused its discretion by not instructing the jury to disregard Amy's testimony alluding to an extraneous offense after sustaining his objection to the testimony. The State responds that Appellant forfeited his complaint because his request for the instruction was late and unclear. We hold that any error was forfeited and harmless.

The question posed to Amy concerned other inappropriate touching of *her* by Appellant. The answer she began, "There was one time in the pool. My best friend—" is responsive to the prosecutor's question and alludes to Appellant's extraneous conduct against her contained in subsection (2)(e) of the State's notice, conduct to which Appellant lodged "no objection" in the hearing. By failing to object in the hearing, Appellant forfeited any error. *See* Tex. R. App. P. 33.1(a)(1); *Thomas*, 505 S.W.3d at 924.

Even if Appellant's statement of "no objection" and the trial court's admission of "the matters . . . considered in the hearing for the purposes stated" did not encompass Appellant's touching Amy's inner thigh in the pool, even if Amy's testimony nonresponsively alluded to the criminal allegation in Number 3 of the State's notice, and even if that allegation was inadmissible under Article 38.37, *see* Tex.

19

Code Crim. Proc. Ann. art. 38.37, § 1(b),[3] Appellant's request for an instruction to disregard Amy's testimony lacked sufficient specificity. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992) ("To preserve error, . . . the most important procedure is to press the specific objection to the point of obtaining an adverse ruling, be that to the objection, the request for an instruction, or the motion for mistrial."); *Walker v. State*, 440 S.W.2d 653, 660 (Tex. Crim. App. 1969) (upholding "the trial court's refusal to heed [defendant's] written objection and instruct the jury 'to disregard the actions, if any, of Jim Langford as presented in the evidence of this case'" on the basis that "this objection is too broad and vague and does not distinctly specify the ground of error and does not point out to the court which actions of [defendant's] companion at the time in question and a defense witness to which he has reference").

---

[3]Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b).

We cannot determine from Appellant's general request for an instruction to disregard whether he wanted the trial court to instruct the jury to disregard Amy's testimony, the prosecutor's statement to her that she did nothing wrong, the prosecutor's statement directing her not to talk about "that incident," or the prosecutor's new question beginning, "Do you remember the incident—." By failing to specify what he wanted the trial court to instruct the jury to disregard, Appellant forfeited any error.

Even if error had been preserved, however, it would be harmless. Because the error is not constitutional, *Stewart*, 221 S.W.3d at 310, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b). That Rule requires us to disregard any nonconstitutional error that does not affect an appellant's substantial rights. *Id.* An error that has a "substantial and injurious effect or influence in determining the jury's verdict" affects a substantial right. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (citation and internal quotation marks omitted); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In determining the likelihood that a nonconstitutional error adversely affected the jury's decision, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of

the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56. When an error that occurs in the guilt-innocence phase of a trial does not likely move the jury from a state of nonpersuasion to a state of persuasion concerning the defendant's guilt, the error is harmless. *Murkledove v. State*, 437 S.W.3d 17, 29 (Tex. App.—Fort Worth 2014, pet. ref'd).

Error, if any, is harmless in this case. *First*, no other evidence refers to the incident in the pool involving Appellant, Amy, and her friend. The State's first witness, Jennifer Edwards, a licensed sex offender treatment provider, testified generally that a child sex offender's grooming of a child "will usually start with caressing the thigh or having the victim sit on their lap, maybe playing with them in the swimming pool . . . ." She also testified that when penile plethysmographs are administered, the person might be shown "kids in swimsuits" accompanied by audio describing a sexual scenario. However, besides Amy's words, "There was one time in the pool. My best friend—," no other evidence referred to swimming, the pool, or

22

the incident involving Appellant, Amy, and a friend, nor did the parties refer to

swimming or the pool in voir dire, opening statements, or closing arguments.[4]

*Second*, the trial court instructed the jury on multiple occasions to consider only

admitted evidence. After voir dire, the trial court told jurors to decide Appellant's

guilt based "only on evidence admitted in open court" and to "obey all the

instructions [they had] received and others that [they would] be given during trial."

Before opening statements, the trial court instructed the jury that it could not

"consider anything to which an objection is sustained," and in the jury charge on

guilt-innocence, the trial court instructed the jury that it could consider "only . . . facts

and circumstances in evidence." Absent evidence to the contrary, we usually presume

that a jury follows a trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574,

---

[4]Appellant argues that the swimming incident "was the first topic, and the only contested factual topic, mentioned in the State's initial closing." He is mistaken. What the prosecutor actually said was this:

> I want to briefly go over something in the Jury Charge. If you would, just turn to No. 10 on Page 4. As Judge Brotherton was reading that, you may have wondered what is he talking about there. . . . [Y]ou heard testimony from [Amy] that there were other acts committed by this Defendant against her that are not part of the actual indictment. Those are other acts that she says that he committed against her and that is what it's referring to. *Specifically she said that he made her touch his penis. In addition, she talked about the second living room incident.* And as you recall, there's only one living room incident under indictment. So that's what No. 10 is referring to if you have any questions about that. [Emphasis added.]

23

580 (Tex. Crim. App. 2009); *Thomas v. State*, 461 S.W.3d 305, 311 (Tex. App.—Fort Worth 2015, no pet.).

*Third*, the evidence supporting Appellant's guilt was strong. *See Motilla*, 78 S.W.3d at 355. Amy testified about the charged conduct as well as several extraneous, admissible acts of sexual abuse Appellant committed against her. The SANE saw "fairly new" genital injuries that were consistent with Amy's outcry, and the forensic interviewer's testimony also supported the charged conduct. The jury heard the testimony of both Amy and Appellant and by convicting Appellant, showed its belief in her credibility. *See Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) ("[T]he jury is free to accept or reject any or all of the evidence of either party, and any or all of the testimony of any witness.").

For all these reasons, we hold harmless any error in the trial court's refusal to give the requested instruction to disregard. We overrule Appellant's third point.

## CONCLUSION

Having overruled Appellant's three points, we affirm the trial court's judgments.

24

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 6, 2020